# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA M. SWEENEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-490-RAW-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Lisa M. Sweeney requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born February 26, 1973, and was forty-two years old at the time of the most recent administrative hearing (Tr. 658). She completed the twelfth grade and also obtained a CNA certificate, and has worked as an automobile assembler, door assembler, and mental retardation aide (Tr. 158, 632). The claimant alleges that she has been unable to work since her first application date of July 3, 2007, due to type II diabetes, chronic hepatitis C, depression, obesity, high blood pressure, asthma, anxiety, and panic attacks (Tr. 151).

**Procedural History**

On November 13, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael Kirkpatrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated October 12, 2011 (Tr. 18-29). The Appeals Council denied review, but this Court reversed in Case No. CIV-13-124-RAW-SPS, and remanded with instructions to properly assess the claimant's RFC and account for her pain (Tr. 746-758). On remand, ALJ Deborah L. Rose held an administrative hearing and again determined that the claimant was not disabled in a written opinion dated August 24, 2015 (Tr. 612-634). In the meantime, the

claimant filed subsequent applications for disability insurance benefits and supplemental security income benefits, and those applications were denied. ALJ Bernard Porter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 22, 2014 (Tr. 762-783). Upon remand from this Court in Case No. CIV-13-124-RAW-SPS, the Appeals Council remanded the original applications and instructed the ALJ to consider the subsequent decision if necessary (Tr. 800). Accordingly, ALJ Rose's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.*, the claimant could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, but that she required a sit/stand option that would allow her to briefly change position for approximately three to four minutes at a time, about every thirty minutes without leaving the workstation. Additionally, she could occasionally operate hand and foot controls, kneel, and climb ramps and stairs; she could never climb ladders, ropes, or scaffolds, crawl, or be exposed to temperature extremes or hazards, such as unprotected heights and dangerous moving machinery. She could also frequently balance, stoop, crouch, handle, and finger, but have no more than occasional exposure to respiratory irritants. Finally, the ALJ found that the claimant can understand, remember, and carry out simple instructions, can make

simple work-related decisions, and can occasionally interact with supervisors, coworkers, and the public (Tr. 619). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, inspector/hand packager, bench assembler, and bagger (Tr. 632-633).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess her RFC, and (ii) improperly determining the jobs she could perform at step five.[3] The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should be reversed.

The ALJ found that the claimant had the severe impairments of diabetes mellitus, hepatitis C, obesity, asthma, migraine headaches, osteoarthritis, ischemic heart disease, depression, anxiety with panic, somatoform disorder, and personality disorder (Tr. 615). The relevant medical evidence reveals that the claimant received regular treatment at the Health and Wellness Center Sequoyah County, in Sallisaw, Oklahoma and the Stigler Health & Wellness Center. Notes reflect diagnoses of diabetes, a depressive disorder not otherwise specified, hypertension, and hepatitis C (Tr. 307-325, 404-407, 478-573). Later treating notes indicate that the claimant's diabetes was uncomplicated, but that it was often considered uncontrolled (Tr. 1084). On October 27, 2013, the claimant presented to the emergency room with a complaint of high blood sugar, and was noted to

---

[3] Under Local Civ. R. 7.1(c), "[b]riefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings and subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited." The claimant's brief fails to comply with this rule, but the undersigned Magistrate Judge nevertheless elects to address the merits of the claimant's contentions.

5

have leg swelling (Tr. 1136). On May 7, 2014, her treating physician Dr. Mark Rogow wrote that the claimant could not work and was, in his opinion, totally and permanently disabled (Tr. 1164). On September 30, 2014, the claimant was noted to be able to only walk 200 yards due to back pain and shortness of breath, along with problems with lower extremity edema, noting that she had been in the ER for swelling several times (Tr. 1171).

As to her mental impairments, the claimant was largely managed with prescription medications, and appeared to tolerate her meds but still struggled with anxiety and did not go out in public very often (Tr. 1091, 1101).

Dr. Terry Hoyt completed a physical RFC assessment of the claimant, finding that she could sit/stand/walk for no more than twenty minutes at a time in an eight-hour workday, that she could only sit/stand/walk for one hour total during an eight-hour workday, and that she would need rest breaks at hourly intervals and to alternate sitting and standing every fifteen minutes (Tr. 583). He indicated she could frequently lift/carry up to five pounds, occasionally up to ten pounds, and rarely up to twenty pounds, but never over twenty pounds (Tr. 583-584). Further, he stated that the claimant was limited in the use of leg or foot controls and that her legs would need to be elevated when she was seated (Tr. 584). He noted a number of limits as to her upper extremities, and indicated she could rarely bend, squat, crouch, climb stairs and ramps, and never crawl, stoop, kneel, balance, climb ladders or scaffolds (Tr. 584-585). He indicated she needed to completely avoid near hazardous conditions and handling vibrating tools, and had marked restrictions related to exposure to extremes, respiratory irritants, and high noise

6

levels (Tr. 585). In support, he noted that the claimant was "[o]bese, very poor physical conditioning with polyarthralgias degenerative joint changes, uncontrolled type 2 diabetes mellitus with secondary complications based on today's examination (Tr. 585). He remarked that the claimant was "in state of obvious physical decline. Patient needs neurological and ophthalmology workup but states can't afford. Patient at risk of irreversible damage to eyes and nervous system" (Tr. 585).

Dr. Tracy Carney completed a physical consultative examination of the claimant on March 13, 2010. Dr. Carney assessed the claimant with diabetes mellitus type 2 uncontrolled, hepatitis C by history, mild intermittent asthma by history, polyarthralgias probably musculoskeletal in origin versus osteoarthritis in light of her history of uncontrolled diabetes, morbid obesity, depression and anxiety and panic attacks, and tobacco abuse (Tr. 350-351).

Diane Brandmiller, Ph.D., completed a mental status examination of the claimant on February 24, 2010 (Tr. 343). Dr. Brandmiller's impression was that the claimant had major depressive disorder, single episode, moderate, as well as hepatitis C, diabetes, high blood pressure, obesity, and asthma (Tr. 346). Dr. Brandmiller noted the claimant's long-term memory appeared intact and she had no trouble describing personal historical information, that her short-term memory and concentration appeared intact, that her abstract thinking was slightly impaired, and that she appeared able to understand and carry out simple instructions (Tr. 346).

The claimant's attorney sent her for another psychological evaluation, conducted by Robert Spray, Ph.D. He noted she appeared to have an IQ in the borderline or low

average range and that she seemed to have problems with short-term memory and delayed recall, then described her speech as pressed, tangential, circumstantial, and somatically preoccupied (Tr. 603). He assessed her with major depression, somatoform disorder NOS, and personality disorder, NOS with histrionic, dependent, and hypochondrical features (Tr. 604).

A state reviewing physician found the claimant could perform medium work, but must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 394, 397). Another reviewing physician found the claimant had mild degrees of limitation in the areas of functional limitation, and no episodes of decompensation (Tr. 367).

At the first administrative hearing, the claimant estimated she could stand without leaning for approximately fifteen minutes, and that she could walk fifty yards before needing to stop and rest (Tr. 48). She said she has trouble bending, squatting, and climbing stairs, as well as picking things up with her left (dominant) hand (Tr. 48-49). At the most recent administrative hearing, she testified that she believed she could stand about five minutes without some sort of assistance, and that she can walk about forty feet before she needs to stop and rest (Tr. 669-670). She did not believe she could even occasionally lift up to five pounds because she believed she would drop things (Tr. 670).

In his written opinion, the ALJ thoroughly summarized the claimant's hearing testimony, as well as much of the medical evidence in the record. She used the typical boilerplate language to find the claimant not credible, but returned to the claimant's credibility later in the opinion stating that she did not find the claimant to be a credible

witness because she "wanted to make excuses or rationalize her answers," and appeared to be evasive (Tr. 621, 631). The ALJ then asserted her own opinion that the claimant was taking too many Xanax per day, that the medical evidence did not support the claimant's allegations, and that the claimant's treatment had been routine and conservative (Tr. 631). She continued, making a distinction that although the claimant's diabetes was uncontrolled, it was uncomplicated, and noting that edema was rarely noted in her medical records (Tr. 631). As to the claimant's mental impairments, the ALJ noted the claimant's reports that her mood had improved (not acknowledging that the claimant rarely left her home and agoraphobia was part of her diagnoses), and noting her daily activities (Tr. 631). As to the opinion evidence, the ALJ gave little weight to the opinions of Dr. Hoyt and Dr. Spray, but gave great weight to Dr. Brandmiller's examination, finding it supported by her own exam and Dr. Spray's exam (to which she assigned little weight) (Tr. 627-629). She then gave little weight to the state reviewing physicians who found she could perform medium work and did not have a severe mental impairment (Tr. 630).

As part of her argument that the ALJ erred in assessing her RFC, the claimant contends, *inter alia*, that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-

3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[4] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

---

[4] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.

**DATED** this 10th day of March, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**